2012 OK 20

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Thomas Prade BELLAMY, Respondent.**

No. SCBD–5739.

Supreme Court of Oklahoma.

March 6, 2012.

---

Ted Rossier, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for the Complainant.

Thomas Prade Bellamy, Blair, Oklahoma, pro se.

WINCHESTER, J.

¶ 1 On March 17, 2011, the Oklahoma Bar Association (OBA) filed three counts of professional misconduct against the Respondent, Thomas Prade Bellamy, pursuant to Rule 6 of the Rules Governing Disciplinary Proceedings ("RGDP"). The Respondent was served with the complaint and filed an entry of appearance and request for additional time. On April 19, 2011, the Chief Justice granted the extension of time. Subsequently, the Respondent failed to file an answer and on July 29, 2011, the Complainant filed a motion to deem allegations admitted. A hearing was held on August 2, 2011, before a Trial Panel of the Professional Responsibility Tribunal ("PRT"). The Respondent was properly notified, but failed to appear.

¶ 2 The Trial Panel issued its report on September 12, 2011, adopting the facts contained in the OBA's complaint and recommending suspension of two years and one day as the appropriate discipline.

Count I—The Locklear Complaint

¶ 3 The Bar Association alleges the following facts in Count I of the complaint. In June 2009, the Respondent was hired by Robert Locklear to handle the probate of his

**58**

mother's will. Locklear paid $1,250 and provided the Respondent with original estate documents including a will, real estate deed and title abstract. Since accepting the fee, Respondent has failed to communicate with Locklear and done no work on the case. In a deposition given by the Respondent on July 16, 2010, he reported that he was "unable to locate the material that Mr. Locklear turned over." He indicated he would locate the files the following weekend and provide them to the Bar investigator, but to date he has failed to do so.

### Count II—The Rushano Complaint

¶ 4 The Bar Association alleges the following facts in Count II of the complaint. Respondent was hired by Paula Rushano in September 2006 to represent her in a boundary dispute and to file a suit to quiet title to Rushano's residence. She paid Respondent $1,030. The Respondent did perform some work on the cases, but was slow in acting and caused the cases to be delayed for two years. During this time, Rushano had difficulty contacting the Respondent and he failed to provide her with status updates or billing statements. In October 2008, Rushano met with the Respondent at his office and he refunded the entire fee she had paid him. Two days later, she filed a grievance against the Respondent with the Bar Association. The Respondent later agreed to complete the case at no charge to "keep the peace" with Rushano. She agreed, but Respondent once again failed to communicate and continued to neglect the matter. Rushano filed a second grievance against the Respondent in August 2009. In February 2010, opposing counsel in the quiet title action contacted Respondent

with a settlement offer. Respondent stated he would consult his client and provide a response. However, Respondent failed to take further action and has had no subsequent contact with his client or opposing counsel.

### Count III

¶ 5 Count III alleges the Respondent failed to properly and adequately respond to the Locklear Grievance. After the Respondent failed to answer informal requests, the Bar Association opened a formal investigation on May 12, 2010. Respondent was notified of his duty to respond within 20 days, but failed to do so. He was sent two additional notices in June before being subpoenaed in July. Only then did he comply. His deposition was taken on July 16, 2010, at the Bar Association offices. During the deposition, Respondent acknowledged his failure to respond to correspondence he had received from the General Counsel's office.

¶ 6 The Trial Panel made findings of fact as set out in the complaint. Testimony before the Trial Panel and exhibits offered constitute clear and convincing evidence that Respondent took his clients' money, failed to properly represent them, abandoned their cases and perhaps most reprehensible of all, failed to return their original documents so they could pursue other remedies. The Respondent also failed to cooperate with the Bar Association and did nothing to protect his license.

¶ 7 The Trial Panel found in regard to Count I that Respondent committed professional misconduct in violation of Rules 1.1[1], 1.3[2], 1.4[3], 1.15[4] and 8.4(a)(c)[5] of the Okla-

1. Rule 1.1. Competence: A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

2. Rule 1.3. Diligence: A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Rule 1.4. Communication: (a) A lawyer shall: (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to

make informed decisions regarding the representation.

4. Rule 1.15. Safekeeping Property: (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account but only in an amount necessary for that purpose.

(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(e) When in connection with a representation, a lawyer possesses funds or other property in which both the lawyer and another person claim interests, the funds or other property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved, and the undisputed portion of the funds shall be promptly distributed.

(f) Where funds or other items of property entrusted to a lawyer have been impressed with a specific purpose as to their use, they shall retain that specific character unless otherwise authorized by a client or third person or prohibited by law. Where funds are impressed with a specific purpose, a lawyer may not subject them to a counterclaim, set off for fees, or subject them to a lien.

(g) Effective January 1, 2009, all members of the Bar who are required under the Oklahoma Rules of Professional Conduct, to maintain a trust account for the deposit of clients' funds entrusted to said lawyer, shall do so and furnish information regarding said account(s) as hereinafter provided. Each member of the Bar shall provide the Oklahoma Bar Association with the name of the bank or banks in which the lawyer carries any trust account, the name under which the account is carried and the account number. The lawyer or law firm shall provide such information within thirty (30) days from the date that said account is opened, closed, changed, or modified. The Oklahoma Bar Association will provide on-line access and /or paper forms for members to comply with these reporting requirements. Provision will be made for a response by lawyers who do not maintain a trust account and the reason for not maintaining said account. Information received by the Association as a result of this inquiry shall remain confidential except as provided by the Rules Governing Disciplinary Proceedings. Failure of any lawyer to respond giving the information requested by the Oklahoma Bar Association, Oklahoma Bar Foundation or the Office of the General Counsel of the Oklahoma Bar Association will be grounds for appropriate discipline.

(h) A lawyer or law firm that holds funds of clients or third parties in connection with a representation shall create and maintain an interest-bearing demand trust account and shall deposit therein all such funds to the extent permitted by applicable banking laws, that are nominal in amount or to be held for a short period of time in compliance with the following provisions:

(1) the account may be established with any bank or savings and loan association authorized by federal or state law to do business in Oklahoma and insured by the Federal Deposit Insurance Corporation;

(2) the rate of interest payable on the account shall not be less than the rate paid by the depository institution to regular, non-lawyer depositors. Higher rates offered by the institution to customers whose deposits exceed certain time or quantity minimums, such as those offered in the form of certificates of deposit, may be obtained by a lawyer or law firm so long as there is no impairment of the right to withdraw or transfer principal immediately (except as accounts generally may be subject to statutory notification requirements), even though interest may be sacrificed thereby;

(3) the depository institution shall be directed:

(i) to remit interest or dividends, as the case may be, on the average monthly balance in the account, at least quarterly, to the Oklahoma Bar Foundation, Inc. ("Foundation"); and

(ii) to transmit with each remittance to the Foundation a statement showing the name of the lawyer or the law firm for whom the remittance is sent, the account number, the period of time covered by the statement, the rate of interest applied and the average daily balance of the account;

(4) the lawyer or law firm shall not deposit funds belonging to the lawyer or law firm in the account, except that funds necessary to comply with the depository institution's minimum balance requirements for the maintenance of the account or funds needed to pay applicable fees and service charges may be deposited therein;

(5) in determining whether to use the interest-bearing account herein specified, the lawyer shall consider whether the funds to be invested

could be utilized to provide a positive net return to the client, taking into consideration the following factors:

(i) the amount of interest that the funds would earn during the period they are expected to be deposited;

(ii) the cost of establishing and administering the account, including the cost of the lawyer's services and the cost of preparing any tax reports required for interest accruing to a client's benefit; and

(iii) the capability of financial institutions to calculate and pay interest to individual clients;

(6) in the event that any client asserts a claim against a lawyer based upon such lawyer's determination to place client advances in the account because such balance is nominal in amount or to be held for a short period of time, the Foundation shall, upon written request by such lawyer, review such claim and either:

(i) approve such claim (if such balances are found not to be nominal in amount or short in duration) and remit directly to the claimant any sum of interest remitted to the Foundation on account of such funds; or

(ii) reject such a claim (if such balances are found to be nominal in amount or short in duration) and advise the claimant in writing of the grounds therefor. In the event of any subsequent litigation involving such a claim, the Foundation shall interplead any such sum of interest and shall assume the defense of the action;

(7) The requirements of subparagraph (h) shall not apply if:

(i) it is not feasible for the lawyer or law firm to establish an interest-bearing trust account for reasons beyond the control of the lawyer or law firm, such as the unavailability of a financial institution which offers such an account in the community where the principal office of the lawyer or law firm is situated, or

(ii) those financial institutions which offer such an account in the community where the principal office of the lawyer or law firm is situated impose fees and service charges that routinely exceed the interest generated by the account; and

(8) Information necessary to determine compliance or justifiable reason for noncompliance with the requirements of subparagraph (h) shall be included in the reporting required by subparagraph (g) of this rule. If it appears that a lawyer or law firm has not complied where it is feasible to do so, the matter may be referred to the office of the General Counsel of the Oklahoma Bar Association for appropriate investigation and proceedings.

(i) When a lawyer receives funds subject to this rule that are not required to be deposited in an interest bearing account payable to the Oklahoma Bar Foundation pursuant to (h), the lawyer may create and maintain either an interest bearing or a noninterest bearing account, provided that any interest earned by the funds belongs to the client, shall be distributed according to the client's instructions, and shall not be used by the lawyer for any purpose without the client's express consent.

(j) Beginning January 1, 2008 and in addition to the requirements previously set forth in this Rule, lawyers trust accounts shall be maintained only in financial institutions approved by the Office of the General Counsel. The Office shall establish rules governing approval and termination of approved status for financial institutions, and shall annually publish a list of approved financial institutions.

(k) A financial institution may be approved as a depository for lawyer trust accounts if it files with the Office of the General Counsel an agreement, a Trust Account Overdraft Reporting Agreement (TAORA) form provided by the Office, to report to the Office in the event any properly payable instrument is presented against a lawyer trust account containing insufficient funds, irrespective of whether or not the instrument is honored. No trust account shall be maintained in any financial institution which does not agree to make such reports. Any such agreement shall apply to all branches of the financial institution and shall not be cancelled except upon thirty (30) days notice in writing to the Office.

(*l*) The Trust Account Overdraft Reporting Agreement shall provide that all reports made by the financial institution shall be in the following format:

(1) In the case of a dishonored instrument, the report shall be identical to the overdraft notice customarily forwarded to the depositor, and should include a copy of the dishonored instrument, if such a copy is normally provided to depositors.

(2) In the case of instruments that are presented against insufficient funds but which instruments are honored, the report shall identify the financial institution, the lawyer or law firm, the account number, the date of presentation for payment and the date paid, as well as the amount of overdraft created thereby.

(3) Such reports shall be made simultaneously with, and within the time provided by law for notice of dishonor, if any. If an instrument presented against insufficient funds is honored, then the report shall be made within five (5) banking days of the date of presentation for payment against insufficient funds.

(m) Every lawyer practicing or admitted to practice in this jurisdiction shall be deemed to have consented to the reporting and production requirements mandated by this rule.

(n) Nothing herein shall preclude a financial institution from charging a particular lawyer or law firm for the reasonable cost of producing the reports and records required by this rule.

(*o*) Definitions

"Financial Institution"—includes banks, savings and loan associations, savings banks and any other business or person which accepts for deposit funds held in trust by lawyers.

homa Rules of Professional Conduct, 5 O.S. 2011, Ch. 1, App. 3–A and Rule 1.3 [6] of the Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A. With respect to Count II, the Trial Panel found that Respondent committed professional conduct in violation of Rules 1.1, 1.3, 1.4 and 8.4(a), ORPC; and Rule 1.3 RGDP. The Trial Panel found that with respect to Count III, Respondent committed professional misconduct in violation of Rules 8.1(b) [7] and 8.4(a) [8], ORPC; and Rules 1.3 and 5.2 [9], RGDP and as a result warrants discipline. The Trial panel recommended to this Court a suspension of two years and one day. The Complainant agreed with the Trial panel's recommendation as an appropriate level of discipline for Respondent's professional misconduct. The Respon-

dent did not file a brief and the Complainant waived filing a reply brief.

## Standard of Review

¶ 8 This Court has exclusive original jurisdiction over Bar disciplinary matters. *State ex rel. Oklahoma Bar Association v. Funk*, 2005 OK 26, ¶ 3, 114 P.3d 427, 430. Our standard of review is *de novo*, in determining if the Bar Association proved its allegations of misconduct by clear and convincing evidence. Findings of fact and conclusions of law by the Trial Panel are advisory, rather than binding. Protecting the public and purification of the Bar are the primary purpose of disciplinary proceedings rather than punishment of the offending attorney. *State ex rel. Oklahoma Bar Associ-*

"Properly payable"—refers to an instrument which, if presented in the normal course of business, is in a form requiring payment under the laws of this jurisdiction.
"Notice of dishonor"—refers to the notice, which a financial institution is required to give, under the laws of this jurisdiction, upon presentation of an instrument, which the institution dishonors.

5.  Rule 8.4 Misconduct: It is professional misconduct for a lawyer to:
    (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

6.  Rule 1. Jurisdiction of the Court in the Discipline of Lawyers and the Unauthorized Practice of Law.
    § 1.3. Discipline for Act Contrary to Prescribe Standards of Conduct: The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

7.  Rule 8.1 Bar Admission And Disciplinary Matters: An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
    (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that

this rule does not require disclosure of information otherwise protected by Rule 1.6.

8.  Rule 8.4 Misconduct: It is professional misconduct for a lawyer to:
    (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

9.  Rule 5. Filing and Processing of Grievances and Requests for Investigation.
    § 5.2. Investigations: After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete' or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

*ation v. Chappell,* 2004 OK 41, ¶ 23, 93 P.3d 25, 31. After reviewing the record, we have determined that the Trial Panel's findings and conclusions are supported and the allegations of misconduct are established by clear and convincing evidence.

### Discipline

 ¶ 9 Appropriate discipline is determined by analyzing the level of discipline imposed in other similar cases. The complainant offers *State ex rel. Oklahoma Bar Association v. Edwards,* 2011 OK 3, 248 P.3d 350 for guidance. Like the Respondent, Edwards also neglected client matters, failed to keep clients informed and failed to cooperate with the Bar Association once grievances were filed. Edwards was suspended from the practice of law for two years and one day. The case at hand also bears striking similarities to *State ex rel. Oklahoma Bar Association v. Whitebook,* 2010 OK 72, 242 P.3d 517. Whitebrook also accepted fees for probate work and then failed to complete the cases. The Court found suspension of two years and one day to be the proper discipline in this case as well.

¶ 10 In the case at hand, the Respondent has not been previously disciplined. The trial panel report and the Complainant's brief-in-chief were sent to the Respondent, yet he has repeatedly failed to respond. His actions show a blatant disregard for the disciplinary process and for the Court. At his deposition, Respondent also assured the General Counsel's office that he would hand over Mr. Locklear's documents to them, yet he failed to do so. When asked the last time he had spoken with his client, the Respondent replied, "probably about 18 months." He was then asked if he could give a reason for his lack of communication, to which he simply answered, "no." Assistant General Counsel Rossier continued, "Did you do any work in the case at all to earn your fee?" To which the Respondent replied, "I have not." Respondent's blatant disregard for his client and the Court warrant suspension of two years and one day.

### Application to Assess Costs

¶ 11 On September 12, 2011, the Complainant filed its application to assess costs against the Respondent in the sum of $608.04, pursuant to Rules 6.13 and 6.16, RGDP, 5 O.S. ch. 1, app. 1–A (1991). The motion to assess costs is granted and the Respondent is ordered to pay the costs of the proceeding in the amount of $608.04 within 90 days after this opinion becomes final.

RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR TWO YEARS AND ONE DAY; ORDERED TO PAY COSTS.

CONCUR: COLBERT, V.C.J., KAUGER, WINCHESTER, EDMONDSON, REIF, GURICH, JJ.

COMBS, J. DISSENTING, WITH WHOM TAYLOR, C.J., JOINS: I WOULD DISBAR THIS RESPONDENT.

WATT, J.: NOT PARTICIPATING.