OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BRADLEY

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BRADLEY
2014 OK 78
Case Number: SCBD-6101
Decided: 09/16/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 78, __ P.3d __
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
WILL DOUGLAS BRADLEY, Respondent.

ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE

¶0 The Oklahoma Bar Association filed a Complaint against Will Douglas Bradley alleging multiple violations of the Oklahoma Rules of Professional Conduct, 5 O.S. 2011, Ch. 1, App. 3-A, and the Rules Governing Disciplinary Proceedings, 5 O.S. 2011, Ch. 1, App. 1-A. The OBA raised two counts. The first count alleges Bradley failed to communicate with a client, neglected his client's case, and failed to properly respond to the grievance. The second count alleges Bradley failed to properly respond to another grievance.

RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR
EIGHTEEN MONTHS; ORDERED TO PAY COSTS

Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Will Douglas Bradley, Respondent, appearing pro se.

COMBS, J.

¶1 The Complainant, Oklahoma Bar Association (OBA), brought a disciplinary action against the Respondent, Will Douglas Bradley, under the provisions of Rule 6 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, Ch. 1, App. 1-A. The OBA alleged Bradley committed specific acts constituting professional misconduct in violation of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. Supp. 2011, Ch. 1, App. 3-A and the RGDP. The OBA filed a Complaint with the Chief Justice of the Oklahoma Supreme Court on January 17, 2014. The Complaint asserted two Counts against Bradley. Bradley answered the Complaint on February 6, 2014. A Trial Panel was appointed by the Professional Responsibility Tribunal (PRT) pursuant to Rule 6.6, RGDP and a hearing was held on April 23, 2014. The Trial Panel left the record open until May 5, 2014, to allow Bradley time to mitigate the accusations against him. A Trial Panel Report was filed May 22, 2014, and the issues were subsequently briefed by both parties.

FACTUAL AND PROCEDURAL BACKGROUND

COUNT I. THE HARRILL GRIEVANCE

¶2 On or about April 27, 2012, Brooklyn Layne Harrill retained Bradley to represent her in a divorce proceeding. Bradley agreed to a $2,500.00 flat fee and provided no contract or explanation of how the money would be earned by him.

¶3 On or about August 29, 2012, Harrill terminated Bradley's service. On September 19, 2012, Harrill filed a grievance with the OBA. She alleged: 1) Bradley did not respond to the petition for divorce; 2) Bradley was late for a court appearance; 3) she drove a long distance for a second court appearance (August 28, 2012) only to find it had been continued without her knowledge; 4) Bradley was difficult to contact; 5) she made several requests for a statement concerning the expenditure of the flat fee and was never provided one, and; 6) she asked for a refund of any unearned portion of the flat fee as to which Bradley responded he would send her a bill instead.

¶4 On October 10, 2012, the OBA initiated an informal complaint (IC 12-895) and sent Bradley a letter requesting he respond to the grievance within two weeks from the date of the letter (October 24, 2012). In a letter dated October 29, 2012, Bradley requested an extension to respond; the OBA agreed and gave him until November 7, 2012, to respond. However, over three months passed without a response. The OBA escalated the matter to a disciplinary complaint (DC 13-15) and sent Bradley a letter dated February 13, 2013, explaining a formal investigation had been opened and Bradley was required to respond within 20 days pursuant to Rule 5.2, RGDP.[1] On March 8, 2013, Bradley requested an additional 10 days to respond. The OBA granted this request and extended the deadline to March 18, 2013, and once again Bradley failed to respond. On March 20, 2013, the OBA sent Bradley a certified letter imploring him to respond within 5 days and informing him that the Professional Responsibility Commission (PRC) pursuant to Rule 2.8(b), RGDP is authorized to issue a subpoena to require his testimony if he fails to provide a written response. The record reflects Bradley received the March 20 certified letter on April 13, 2013, yet he again failed to respond. On April 24, 2013, the OBA sent Bradley another letter via email and by regular and certified mail to his roster address. This letter was similar to the March 20, 2013, letter and again requested Bradley respond within 5 days of the date of the letter or further action would be taken including the possible issuance of a subpoena duces tecum requiring sworn testimony and the production of books and records. Bradley did not claim the April 24, 2013, certified letter or respond to the other notifications.

¶5 On May 22, 2013, the PRC issued an order authorizing the OBA General Counsel to issue a subpoena duces tecum. The subpoena duces tecum was issued and required Bradley to appear at the Oklahoma Bar Center on June 12, 2013, at 10:00 a.m. and testify before the General Counsel of the OBA. It also requested he bring for inspection and/or photocopying all books, records, papers, documents, and other tangible evidence related to the grievance. It was served on Bradley by a process server on May 26, 2013. On June 12, 2013, Bradley failed to appear at the deposition. The General Counsel waited until 10:33 a.m. before concluding the transcript and testimony and releasing the court reporter. Approximately three hours later Bradley appeared at the Oklahoma Bar Center. Bradley apologized to the General Counsel for being late and claimed he misdocketed the deposition. Bradley also claimed he brought documents requested in the subpoena duces tecum, however, he did not provide an accounting related to the Harrill flat fee.[2] He also told the General Counsel his lack of response had been out of utter fear that he would lose his license.

¶6 On June 24, 2013, the OBA received Bradley's answer to the grievance. In the answer, Bradley claimed he never missed a court appearance concerning Harrill's divorce but admitted he had been almost an hour late to a hearing. He also claimed the reason he informed his client so late of the continuance on the second hearing was because he did not know until the morning of the hearing that opposing counsel would allow a continuance. He also explained he wanted Harrill to be at the court house in case he was able to have the matter heard later that morning. Bradley said he had many communications with his client usually by text messaging, "far greater than any other client I have had." He said he could not always respond to her because either there was no new information to provide or the texts were received while in court. He believed he responded to numerous messages taking into consideration the relatively short period he represented her. He also stated he successfully negotiated a very favorable temporary order for Harrill. As to Harrill's complaint concerning the earning of the flat fee, Bradley said, it "is a matter for civil court should she elect to so proceed."

¶7 On July 31, 2013, the OBA sent Bradley a letter by e-mail and by certified and regular mail. The OBA specifically requested Bradley provide an accounting on Harrill's case and provide a copy of her case file. The deadline was set for August 9, 2013. Attached to the letter was a July 25, 2013, letter from Harrill. In that letter, Harrill claims she made requests many times for a statement concerning how the flat fee was being earned and never received one. She also believed she was entitled to only the unearned portion of Bradley's fee. Harrill explained how she lived two and one-half hours from Yukon, Oklahoma, where Bradley practiced. She said several times she drove to Yukon for an appointment only to find out it had been cancelled. She also mentioned her trip expenses regarding the August 28, 2012, hearing when she drove to Yukon only to find out Bradley had continued the hearing. Further, she explained she had to hire a new attorney because of how Bradley had handled her case.

¶8 Bradley did not collect the July 31, 2013, certified letter. Bradley did, however, send an e-mail on August 9, 2013. In his email, Bradley requested he be given until August 26, 2013, to respond to the OBA's request for an accounting and Harrill's case file. On August 27, 2013, the OBA sent Bradley an email stating it still had not received the requested documentation. Bradley did not respond, and on October 3, 2013, the OBA sent Bradley a final request letter for an accounting and case file. The letter was sent via e-mail, regular mail and certified mail. Bradley was given until October 14, 2013, to provide the requested documentation. The record reflects the certified letter was unclaimed and Bradley made no other response on this grievance by the time the formal complaint was filed with the Chief Justice's Office on January 17, 2014.

COUNT II. THE KEISER GRIEVANCE

¶9 On October 29, 2013, less than a month from the last deadline on the Harrill case, another one of Bradley's clients, Misty Keiser, filed a grievance with the OBA. Bradley represented Keiser in a divorce case initiated in December 2011, and a Department of Human Services (DHS) matter. Keiser paid Bradley a $1,000.00 retainer on the divorce case and she alleged he did nothing to help her on either case. Attached to the grievance is a letter she wrote to Bradley dated June 10, 2013, wherein she requested Bradley send her an itemized statement for the work performed and refund any unused portion of the retainer. She also requested her case file.

¶10 By letter dated November 4, 2013, the OBA informed Bradley a formal investigation on the Keiser matter had been opened (DC 13-185) and he was required to respond within 20 days per Rule 5.2 RGDP. On November 24, 2013, Bradley asked for a 20 day extension to respond. The OBA granted an extension but only to December 4, 2013. Bradley failed to respond by the deadline and on the same day the OBA sent Bradley a letter by certified mail informing Bradley he must respond within 5 days. The certified letter appears to have been delivered on December 6, 2013. Bradley did not respond prior to the formal complaint being filed with the Chief Justice's Office on January 17, 2014.

THE FORMAL PROCEEDINGS

¶11 The OBA filed a Complaint against Bradley on January 17, 2014, concerning the two grievances. The OBA alleged Bradley violated Rules 1.3[3] , 1.4[4] and 1.5,[5] ORPC concerning Count I "by failing to diligently represent or communicate with Harrill and by failing to return unearned fees to Harrill." The OBA also alleged Bradley violated Rule 5.2, RGDP on both Counts I and II because Bradley repeatedly failed to respond to the OBA's requests. In Bradley's Answer to the Complaint, filed February 6, 2014, he appears to admit to the Rule 5.2, RGDP violations in both Counts I and II. He also denied in part, without specifying which part he is denying, the alleged violations of Rules 1.3, 1.4, and 1.5, ORPC concerning Count I.[6]

¶12 The Complaint also mentioned two previous disciplinary matters where Bradley received a private reprimand. On August 15, 2008, in OBAD No. 1760, Bradley received a private reprimand for neglect in a family law matter in violation of Rules 1.1, 1.2, 1.3, 1.4 and 1.5, ORPC and for his failure to timely respond to the grievance in violation of Rule 5.2, RGDP. In that case he failed to respond to the OBA for several months. On January 27, 2012, in another case, OBAD No. 1897, Bradley received a private reprimand for neglect of two clients in violation of Rules 1.3, 1.4 and 1.5, ORPC and for his failure to timely respond to either grievance in violation of Rule 5.2, RGDP. Bradley had also failed to respond to the OBA for several months. This private reprimand occurred just three months prior to Bradley accepting representation of Harrill.

¶13 On or about March 13, 2014, Bradley met with Stephen Sullins, Assistant General Counsel to the OBA. The two discussed the case and talked about mitigation options. The mitigation options included the return of any unearned fees. Sullins later testified he told Bradley at the meeting that he did not want this case to be a suspension case; Sullins' testimony also reflects that he believed it was a "forgone fact" that Bradley would try to make some effort at mitigation prior to the hearing. A hearing before the Trial Panel was set for March 18, 2014. Bradley asked for and received a continuance. The hearing was held on April 23, 2014.

¶14 At the April 23, 2014, hearing and in his closing statements, Sullins asserted Bradley had not shown diligence in his representation of Harrill because he never drafted a document or filed one for Harrill.[7] Sullins also asserted Bradley did not properly communicate with Harrill when she needed it the most causing her to drive a long distance to a hearing that had been continued; in addition, Bradley failed to provide Harrill a statement concerning the flat fee after she requested one. Sullins believed it was apparent that some of the $2,500.00 retainer needed to be paid back to Harrill. Sullins was further dumbfounded as to why Bradley repeatedly failed to respond to the grievances when the OBA had "bent over backwards" to get Bradley to comply with his duty to respond. Sullins asserted during the period from 2012 through 2013 there was not only a private reprimand against Bradley for failure to timely respond to a grievance but also two additional grievances to which Bradley failed to respond. Sullins was convinced that had Bradley answered these grievances timely, this matter would have been easily resolved without unnecessary interventions from the OBA. Sullins mentioned the reason for continuing the hearing from March 18 to April 23 was to allow time for Bradley to provide some mitigation. At the time of the hearing, however, Bradley still had not provided any answer concerning the Keiser grievance nor had he provided an accounting to the OBA or his clients. Further, Bradley had not provided any refunds of unearned fees. Sullins therefore recommended Bradley receive a six-month suspension. Sullins did later testify that he might revisit his recommendation if Bradley took action to mitigate prior to the record being closed.

¶15 Bradley testified that he believed from his March conversation with Sullins that Sullins' recommendation would be for a private reprimand regardless of whether he made any effort at mitigation. He claimed he had a detached retina on March 14, 2014, one day after his meeting with Sullins, which required surgery and therefore he was not able to pay back any unearned fees. He also indicated he had some other health issues and suffered to some degree with depression. When asked at the hearing whether he had done anything to mitigate either grievance, Bradley replied "no." Bradley stated he had no excuse for his failure to respond to the OBA or to his clients' requests for refunds, case files and accountings. He also said he acted irrationally and was afraid of the OBA because he feared he would lose his license. Bradley testified that approximately ninety to ninety-five percent of his practice is based upon contracts with Canadian County and the Oklahoma Indigent Defense System. These contracts are his livelihood and he was worried he would lose them. He also testified that the problems he was having only concerned his non-contract cases.

¶16 The Trial Panel questioned Bradley about his flat fee arrangements. The Trial Panel asked Bradley if he agreed that a flat fee is not earned until everything that flat fee is supposed to cover is done. Bradley agreed and further indicated that he had not completed all the work necessary to cover the flat fees and intended to refund some of that money to his clients.

¶17 The Trial Panel left the record open until May 5, 2014, to allow Bradley some additional time to provide mitigation. On May 5, 2014, Bradley filed an Affidavit of Respondent. Attached to the Affidavit were copies of checks written to his clients. Also attached was a response to the Keiser grievance and an accounting related to the flat fees in both grievances. In the affidavit, Bradley stated since the April hearing he had contacted Lawyers Helping Lawyers and had been assigned a mentor. In addition, he had arranged for twenty-five sessions with a doctor and future sessions with a physician for medication monitoring. He also mentioned he was diagnosed with heart problems and has been prescribed medicine for that condition. Bradley believed his physical condition contributed to his mental state as well as caused him an enormous amount of fatigue. He also determined Harrill's billable charges actually exceeded the flat fee paid. Nevertheless, Bradley sent Harrill a check in the amount of $1,250.00, which equals one-half of the flat fee. Bradley further refunded $269.00 to Keiser even though he said the statement he prepared on that case did not include numerous phone calls and conversations concerning her deprived child proceedings. He concluded his affidavit by stating it was his position that by doing the foregoing remedial measures his discipline would be limited to a reprimand.

¶18 The Trial Panel filed its report on May 22, 2014. It found: 1) the OBA had shown by clear and convincing evidence in Count I of the Complaint that Bradley violated Rules 1.3, 1.4 and 1.5, ORPC and Rules 1.3[8] and 5.2, RGDP; 2) the OBA had shown by clear and convincing evidence in Count II of the Complaint that Bradley violated Rules 1.3 and 5.2, RGDP, and; 3) the OBA had proven enhancement by clear and convincing evidence with the introduction of two previous disciplinary actions.

¶19 The Trial Panel also cited several decisions of this Court. In State ex rel. OBA v. Rowe, 2012 OK 88, 288 P.3d 535, a lawyer who was charged with eight counts of professional misconduct and had failed to respond to the grievance was disbarred. In State ex rel. OBA v. Edwards, 2011 OK 3, 248 P.3d 350, a lawyer who was charged with four counts of professional misconduct, including failure to respond to the grievance, was suspended for two years and one day. The Trial Panel quoted from this Court's decision in State ex rel. OBA v. Haave, 2012 OK 92, ¶15, 290 P.3d 747, 752, wherein we paraphrased from our earlier decision in State ex rel. OBA v. Whitebook, 2010 OK 72, ¶23, 242 P.3d at 522, "a person who holds a bar license must promptly and adequately respond to allegations of misconduct when requested to do so;" and "[a]ttorneys who fail to respond to client grievances, who fail to answer formal charges of misconduct, and who fail to appear and participate in disciplinary proceedings, not only show blatant disregard for this Court's authority, but reveal how little they value their license to practice law." Haave, 2012 OK 92 at ¶15.

¶20 The Trial Panel found the level of misconduct in the two grievances was not as significant as in the cases cited. However, Bradley's continuous failure to respond warranted discipline of suspension for a period of time. The Trial Panel was also concerned with Bradley's lack of mitigation at the time of the April 23, 2014, hearing and believed it "follows a pattern of not handling matters of bar grievances in a proper way." The OBA was, however, impressed that Bradley had at least made efforts to mitigate after the hearing and prior to the record being closed on May 5, 2014. It noted Bradley had contacted and been provided a mentor from Lawyers Helping Lawyers and been provided sessions with a doctor and sessions with a physician for medication monitoring. It also noted Bradley's health issues "might somewhat explain his actions in that he probably has suffered from mental and physical ailments which may have affected his ability to deal with bar grievances." The Trial Panel also found it admirable that Bradley had refunded some of the flat fees to his clients, including the $1,250.00 to Harrill when his time sheet showed he had earned the entire fee.

¶21 The Trial Panel's recommendation sought to balance the need to protect the public from lawyer misconduct against the very possible career-ending effect a suspension would bring. It was concerned about the effect a suspension would have on Bradley's contracts with Canadian County and the Oklahoma Indigent Defense System. These contracts represent nearly ninety-five percent of Bradley's practice. It noted none of the complaints stemmed from his contract work and Bradley even suggested he should limit his practice to just his contract work. All Panel members concurred in recommending Bradley be suspended for two years but the suspension would be deferred upon the following conditions:

(1) Respondent limit his representation to the current contracts he has with OIDS and Canadian County or extensions or renewals thereof;

(2) Respondent sign and maintain an appropriate contract with Lawyers Helping Lawyers as may be required by Lawyers Helping Lawyers, including but not limited to having a mentor assigned;

(3) Respondent complete the twenty (25) sessions with Dr. John Schoell to which he refers in his Affidavit filed on May 5, 2014 as well as the medical evaluation and sessions with physicians for monitoring his medications and that Respondent follow all directions from the physicians throughout the period of the deferred suspension especially as same relates to mental and/or depression issues;

(4) Respondent be ordered to pay all costs of these proceedings within ninety (90) days.

¶22 In its Brief in Chief, the OBA states it agrees with a majority of the Trial Panel's recommendations but specifically disagrees with the recommendation to limit Bradley's practice. However, it is unclear whether the OBA agrees with the Trial Panel's recommendation to defer Bradley's suspension. The OBA believes Bradley's repeated failure to answer the grievances coupled with the neglect of client matters warrants meaningful discipline to deter Bradley as well as other attorneys from similar misconduct in the future. It determined Bradley's failure to respond to its requests was egregious considering there were recent private reprimands for the same conduct. Further, the OBA noted, Bradley requested and was granted many extensions to submit his answers to both grievances, yet he still failed to timely do so and he failed to timely show for his subpoenaed deposition.

STANDARD OF REVIEW

¶23 This Court has exclusive original jurisdiction over Bar disciplinary matters. State ex rel. Oklahoma Bar Association v. Funk, 2005 OK 26, ¶3, 114 P.3d 427, 430. Our standard of review is de novo, and the recommendations of the PRT Trial Panel are advisory and not binding on this Court. State ex rel. Oklahoma Bar Association v. Todd, 1992 OK 81, ¶2, 833 P.3d 260, 261; State ex rel. Oklahoma Bar Association v. Bellamy, 2012 OK 20, ¶8, 273 P.3d 56, 61. This Court has the responsibility to examine the record and assess the credibility and weight of the evidence to determine whether it clearly and convincingly shows Bradley committed professional misconduct, and if so, what the appropriate discipline should be. State ex rel. Oklahoma Bar Association v. McCormick, 2013 OK 110, ¶7, 315 P.3d 1015, 1018. Protecting the public and purification of the Bar are the primary purpose of disciplinary proceedings rather than punishment of the offending attorney. State ex rel. Oklahoma Bar Association v. Chappell, 2004 OK 41, ¶23, 93 P.3d 25, 31.

DISCIPLINE

¶24 After reviewing the record, we find the Trial Panel's findings and conclusions are supported and the allegations of misconduct are established by clear and convincing evidence. Of particular interest are Bradley's violations of Rules 1.4 and 1.5, ORPC and Rule 5.2, RGDP.

¶25 Paramount to every attorney/client relationship is trust. An explanation, preferably in writing, of the scope of representation and the basis or rate of the fee and expenses for which the client will be responsible is necessary to maintain trust with the client and to avoid needless conflict. Rule 1.5 (b), ORPC requires "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation . . . ." 5 O.S. 2011, Ch. 1, App. 3-A, Rule 1.5. It is clear that Bradley failed to communicate how the Harrill flat fee would be earned. Harrill testified the terms of Bradley's employment were never put in writing, however, she believed the $2,500.00 flat fee would pay for all of her representation needed in her divorce. Bradley's representation of Harrill lasted four months. The work he performed amounted to the filing of an entry of appearance and negotiating a temporary order. Bradley did not file an answer in Harrill's divorce case nor did he draft the temporary order or file any other documents. At the time of the filing of the Complaint, January 17, 2014, Harrill was still not divorced and had obtained another attorney to represent her. Attached to Bradley's May 5, 2014, Affidavit of Respondent is a statement he had just created showing how he earned his fees. As to the Harrill statement, it indicates he had earned $2,700.00, which is higher than the $2,500.00 flat fee Harrill paid him to represent her through the completion of her divorce. The statement reflects almost all of the transactions were for "consulting w. client." It is apparent Harrill did not believe her communications with Bradley, which consisted mainly of text messaging, would consume a majority of the flat fee. She believed the flat fee covered her full representation in the divorce. The OBA has presented clear and convincing evidence that Bradley failed to adequately communicate the scope of the representation and the basis or rate of the fee and expenses for which Harrill was responsible.

¶26 Even more troubling is Bradley's failure to provide requested statements, refunds and/or case files when requested by his clients. Rule 1.4 (a) (4), ORPC states: "a lawyer shall: . . . (4) promptly comply with reasonable requests for information." It is difficult to imagine a more reasonable request for information than a request for a statement of how fees are being earned or a request for one's case file. Harrill testified that before and after she terminated Bradley's services on August 29, 2012, she requested a statement and after his termination she requested a refund of any unearned fees. The record also shows Keiser wrote Bradley a letter dated June 10, 2013, terminating his services and requesting a statement, a refund of unearned fees and her case file. Bradley provided the statements and refunds on May 5, 2014, after the threat of suspension was made at the April 23, 2014, hearing before the Trial Panel. Using August 29, 2012, as a point of reference, Harrill's statement and refund was provided approximately 21 months after she requested one. Harrill testified she needed Bradley to return any unearned portion of the flat fee to help pay for a new attorney. Such delay was certainly a financial burden to Harrill. Further, using Keiser's June 10, 2013, letter as a point of reference, she was provided a statement and refund approximately 11 months after her request. It took Bradley only two weeks to create and provide both statements and refunds once he was threatened with suspension. The OBA has provided clear and convincing evidence that Bradley failed to properly communicate with his clients as required by Rule 1.4, ORPC, and it is very apparent he would not have done so without the threat of suspension.

¶27 Rule 5.2, RGDP provides that a lawyer must answer a grievance within 20 days after service of the grievance and failure to do so "shall be grounds for discipline." The OBA sent Bradley notice of the Harrill grievance on October 10, 2012, and received his answer on June 24, 2013, almost 9 months later. During this period Bradley received two extensions to respond which he ignored. The OBA also sent 3 additional letters during this period requesting Bradley respond to the grievance within a certain period of time which he ignored. Bradley was eventually served a subpoena duces tecum requesting he appear for a deposition on June 12, 2013, for which he failed to timely appear. The OBA was not satisfied with Bradley's June 24, 2013, answer and further requested on July 31, 2013, that he provide an accounting concerning the flat fee and also provide Harrill's case file. This request was also ignored even though he had been given an extension in which to respond. It was not until May 5, 2014, that Bradley provided the requested accounting, ten months after it was specifically requested by the OBA and only after Bradley was threatened with suspension at the April 23, 2014, hearing before the Trial Panel.

¶28 As to Count II, the Keiser grievance, the OBA sent Bradley notice of the grievance on November 4, 2013; this was only one month after the OBA's last notice to Bradley to provide an accounting and case file in the Harrill case, October 3, 2013. In a letter dated November 24, 2013, the date the answer was due, Bradley asked that he be given an extension until December 14, 2013, to answer. The OBA granted a lesser extension and required Bradley to answer by December 4, 2013. Bradley did not comply. The answer to the Keiser grievance was provided on May 5, 2014, some seven months after it was originally requested and only after Bradley was threatened with suspension at the April 23, 2014, hearing before the Trial Panel.

¶29 The OBA stated in its Brief in Chief that meaningful discipline is warranted here to not only protect the public's interest but to also deter Bradley and other attorneys from similar misconduct. We agree. In the case of State ex rel. Oklahoma Bar Ass'n v. McCormick, 2013 OK 110, 315 P.3d 1015, this Court suspended an attorney for eighteen months for similar misconduct. In McCormick, as in this case, the attorney failed to respond to a grievance and failed to claim certified letters from the OBA. McCormick was served a subpoena duces tecum and not only appeared late to the deposition but failed to provide relevant documents. McCormick's misconduct towards his client amounted to abandoning his client's case and allowing the statute of limitations to run. Although Bradley's misconduct toward his clients may not have been as egregious as McCormick's, McCormick had no previous grievances filed against him. Bradley had two private reprimands for the same misconduct prior to taking on the Harrill case. Like McCormick, Bradley has no valid excuse for failing to communicate with his clients or failing to communicate with the OBA. His repeated failure to respond to both grievances is intolerable and must be deterred. We do not believe a deferred suspension as recommended by the Trial Panel is sufficient. We find that a suspension of eighteen months is warranted and appropriate in this case.

COSTS

¶30 The OBA filed an Application to Assess Costs in the prosecution of this matter pursuant to Rules 6.13 and 6.16 RGDP, in the amount of $1,117.79. The application is granted.

CONCLUSION

¶31 Respondent Will Douglas Bradley is suspended from the practice of law for a period of eighteen months. He is ordered to pay costs in the amount of $1,117.79 within ninety days of the date of this opinion.

¶32 RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW
FOR EIGHTEEN MONTHS; ORDERED TO PAY COSTS

¶33 REIF, V.C.J., and WATT, EDMONDSON, TAYLOR, COMBS and GURICH, JJ., concur.

¶34 COLBERT, C.J., and KAUGER and WINCHESTER, JJ., concur in part and dissent in part.

¶35 WINCHESTER, J., concurring in part and dissenting in part:

I would suspend for 90 days.

FOOTNOTES

[1] Rule 5.2 (RGDP), 5 O.S. 2011, Ch. 1, App. 1-A provides:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action. (emphasis added).

[2] Although the subpoena duces tecum did not specifically request an accounting of the Harrill flat fee, the grievance questioned whether Bradley earned the entire flat fee and therefore the subpoena duces tecum reasonably informed Bradley that an accounting was requested.

[3] Rule 1.3 (ORPC), 5 O.S. Supp. 2011, Ch. 1, App. 3-A provides:

[1] A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. A lawyer is not bound, however, to press for every advantage that might be realized for a client. For example, a lawyer may have authority to exercise professional discretion in determining the means by which a matter should be pursued. See Rule 1.2. The lawyer's duty to act with reasonable diligence does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect.

[2] A lawyer's workload must be controlled so that each matter can be handled competently.

[3] Perhaps no professional shortcoming is more widely resented than procrastination. A client's interests often can be adversely affected by the passage of time or the change of conditions; in extreme instances, as when a lawyer overlooks a statute of limitations, the client's legal position may be destroyed. Even when the client's interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness. A lawyer's duty to act with reasonable promptness, however, does not preclude the lawyer from agreeing to a reasonable request for a postponement that will not prejudice the lawyer's client.

[4] Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client. If a lawyer's employment is limited to a specific matter, the relationship terminates when the matter has been resolved. If a lawyer has served a client over a substantial period in a variety of matters, the client sometimes may assume that the lawyer will continue to serve on a continuing basis unless the lawyer gives notice of withdrawal. Doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so that the client will not mistakenly suppose the lawyer is looking after the client's affairs when the lawyer has ceased to do so. For example, if a lawyer has handled a judicial or administrative proceeding that produced a result adverse to the client and the lawyer and the client have not agreed that the lawyer will handle the matter on appeal, the lawyer must consult with the client about the possibility of appeal before relinquishing responsibility for the matter. See Rule 1.4(a)(2). Whether the lawyer is obligated to prosecute the appeal for the client depends on the scope of representation the lawyer has agreed to provide the client. See Rule 1.2.

[5] To prevent neglect of client matters in the event of a sole practitioner's death or disability, the duty of diligence may require that each sole practitioner prepare a plan, in conformity with applicable rules, that designates another competent lawyer to review client files, notify each client of the lawyer's death or disability, and determine whether there is a need for immediate protective action. Cf. Rule 28 of the American Bar Association Model Rules for Lawyer Disciplinary Enforcement (providing for court appointment of a lawyer to inventory files and take other protective action in absence of a plan providing for another lawyer to protect the interests of the clients of a deceased or disabled lawyer).

[4] Rule 1.4 (ORPC), 5 O.S. Supp. 2011, Ch. 1, App. 3-A provides:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[5] Rule 1.5 (ORPC), 5 O.S. Supp. 2011, Ch. 1, App. 3-A provides:

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of determination.

(d) A lawyer shall not enter into an arrangement for, charge, or collect:

(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(2) a contingent fee for representing a defendant in a criminal case.

(e) A division of a fee between lawyers who are not in the same firm may be made only if:
(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
(2) the client agrees to the arrangement and the agreement is confirmed in writing; and
(3) the total fee is reasonable.

[6] Paragraphs 24 and 25 of the Complaint provides:

24. Respondent's repeated failure to timely respond to the Complainant's requests for response to the allegations is a violation of Rule 5.2 RGDP. Respondent also violated Rules 1.3, 1.4 and 1.5 ORPC by failing to diligently represent or communicate with Harrill and by failing to return unearned fees to Harrill.

25. Respondent's conduct thereby violates the mandatory provisions of Rule 5.2 RGDP and 1.3, 1.4 and 1.5 ORPC and thus, is grounds for discipline.

Bradley's Answer to these paragraphs provides:

24. RESPONDENT ADMITS THE FIRST ALLEGATION CONTAINED IN PARAGRAPH TWENTY-FOUR RESPONDENT DENIES IN PART THE ALLEGATIONS CONTAINED IN THE SECOND SENTENCE OF PARAGRAPH TWENTY-FOUR.

25. RESPONDENT ADMITS IN PART AND DENIES IN PART THE ALLEGATION CONTAINED IN PARAGRAPH TWENTY-FIVE.

[7] The record reflects Bradley filed an entry of appearance in Harrill's divorce case but did not file an answer to the divorce petition or any other documents. Bradley testified that he did, however, negotiate a temporary order in that case.

[8] Rule 1.3 (RGDP), 5 O.S. 2011, Ch. 1, App. 1-A provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline. (Note: the Complaint did not mention Rule 1.3, RGDP)






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Supreme Court Cases Cite
Name
Level 1992 OK 81, 833 P.2d 260, 63 OBJ 1714, State ex rel. Oklahoma Bar Ass'n v. Todd
Cited 2004 OK 41, 93 P.3d 25, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CHAPPELL
Discussed 2005 OK 26, 114 P.3d 427, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FUNK
Discussed 2010 OK 72, 242 P.3d 517, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WHITEBOOK
Cited 2011 OK 3, 248 P.3d 350, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. EDWARDS
Discussed 2012 OK 20, 273 P.3d 56, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BELLAMY
Discussed 2012 OK 88, 288 P.3d 535, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ROWE
Discussed 2012 OK 92, 290 P.3d 747, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HAAVE
Discussed at Length 2013 OK 110, 315 P.3d 1015, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. McCORMICK
Discussed at Length