STATE of Oklahoma, ex rel. OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Kenneth V. TODD, Respondent.

SCBD No. 3733.

Supreme Court of Oklahoma.

June 9, 1992.

Gloria Miller White, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Robert G. Green, Tulsa, for respondent.

LAVENDER, Justice:

Complainant, the Oklahoma Bar Association (OBA) charged respondent, Kenneth V. Todd with misconduct warranting discipline. We hold the OBA did not prove by clear and convincing evidence Todd engaged in deceitful or fraudulent conduct toward an opposing party, but the OBA did prove he engaged in deceitful or fraudulent conduct in presentation of evidence to a tribunal to obtain a default judgment.[1] Such misconduct warrants a six (6) month suspension from the practice of law.

In attorney disciplinary proceedings this Court's determinations are made *de novo*. *State ex rel. Oklahoma Bar Association v. McMillian*, 770 P.2d 892, 894 (Okla.1989). The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with us in the exercise of our exclusive original jurisdiction in bar disciplinary matters. *State ex rel. Oklahoma Bar Association v. Lloyd*, 787 P.2d 855, 858 (Okla.1990). Accordingly, neither the findings of fact of a Professional Responsibility Tribunal (PRT) nor its view of the evidence or credibility of witnesses are binding on us and recommendations of a PRT are merely advisory. *McMillian, supra* at 894. With these principles in mind we turn to a discussion of the matter before us.

Todd was charged with violating Rule 8.4(c) of the Rules of Professional Conduct, 5 O.S. 1991, Ch. 1, App. 3–A. Rule 8.4(c) provides, "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit or misrepresentation [ ]". In that all of the alleged misconduct occurred prior to July 1, 1988, the effective date of the new Rules of Professional Conduct, 5 O.S.Supp.1988, Ch. 1, App. 3–A, Todd should have been charged under the virtually identical predecessor rule found in the former Code of Professional Responsibility, 5 O.S. 1981, Ch. 1, App. 3, DR 1–102(A)(4). As no issue is raised by Todd in regard to this apparent error on the part of the OBA in charging him and we can discern no prejudice to him in light of the fact Rule 8.4(c) contains no substantive change from the former disciplinary rule we proceed on the basis Todd was properly charged under DR 1–102(A)(4).[2]

---

1. In disciplinary proceedings the OBA has the burden to establish the charges by clear and convincing evidence. Rule 6.12(c) of the Rules Governing Disciplinary Proceedings, 5 O.S. 1991, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Association v. Braswell*, 663 P.2d 1228, 1232, f.n. 7 (Okla.1983).

2. DR 1–102(A)(4) provided "[a] lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The only explanation we can discern for charging a violation of the current Rule 8.4(c), rather than the former DR, is that the OBA considered the matter to involve a continuing violation which overlapped into the new Rule which, as noted, became effective July 1, 1988. In our estimation the issues ultimately tried to the PRT were not meant by the parties to be viewed as continuing in nature. Our view is based on certain written stipulations entered into by the parties as to what precisely would be tried to the PRT. We

will set these stipulations out fully in the text and we in no way view them as exhibiting any intent on the part of the OBA to charge a continuing course of misconduct overlapping into the 1988 Rules of Professional Conduct. We further note in closing argument before the PRT Todd's attorney brought up Rule 3.3 of the Rules of Professional Conduct, 5 O.S. 1991, Ch. 1, App. 3–A and the OBA contends in its brief to us Todd was guilty of a violation of such rule. Rule 3.3 concerns Candor to the Tribunal. The stipulations just mentioned do not indicate a violation of Rule 3.3 was to be at issue before the PRT. Rule 3.3 was not mentioned in the Findings of Fact, Conclusions of Law, and Recommendations of the PRT nor in the initial complaint filed against Todd. In that we believe a violation of DR 1–102(A)(4) was shown in this matter in relation to presentation of evidence at a default judgment hearing and Rule 3.3 would not be applicable to the other specific misconduct charged against Todd in-

The OBA and Todd entered into written stipulations concerning the issues to be tried at the PRT hearing. The stipulations were as follows:

Whether or not [ ] Todd, in the handling of Case No. CJ-85-6913, *Kenneth Cooper vs. Tulsa Adjustment Bureau, Inc. and McCormick & Co.*, "engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation", constituting professional misconduct of a lawyer. [Rule 8.4(c) ]

The specific professional misconduct claimed by [the OBA] and denied by [Todd], is that on October 31, 1985, [Todd] had a conversation with Lauren Oswald, employed by McCormick in the legal function department. During that conversation, [Todd] informed Oswald that McCormick was wrongfully garnishing Cooper's pay checks and that if the money was immediately reimbursed the matter would be over with and final. [Todd] failed to tell Oswald a lawsuit had been filed October 30, 1985.

Additionally, on November 27, 1985, [Todd], together with his client, Kenneth Cooper, appeared before Judge Allen Klein for the purpose of taking a default judgment against McCormick. [Todd] failed to inform Judge Klein that the itemized damages of $497.82 prayed for in the petition had, after the filing of the petition, been received by [Cooper]. Also, on November 27, 1985, [Todd] presented to Judge Klein, for the judge's

signature, an order granting the default judgment. Todd prepared the order and included the $497.82 actual damages in the award.

■ We held in *McMillian, supra,* 770 P.2d at 899, DR 1-102(A)(4) is generally geared toward fraudulent conduct and, as such, bad or evil intent or its legal equivalent must be shown by clear and convincing evidence to make out a violation of the rule.[3] It was, thus, incumbent on the OBA to prove by clear and convincing evidence Todd, as to one or the other or both of the specific episodes involved, had a purpose to deceive. We deal with the Oswald matter first, providing background as necessary.

■ On or about July 19, 1985[4] a judgment was entered in the District Court of Tulsa County against Kenneth Cooper in favor of Tulsa Adjustment Bureau, Inc. (Bureau) in the approximate amount of $3,500.00. In an attempt to satisfy the judgment Bureau issued a garnishment summons to Cooper's employer, McCormick & Co. (McCormick), on or about August 2. On August 8 McCormick sent a memo to Cooper advising of the garnishment and stating it would deduct 25% of his net pay to begin with his next paycheck until the judgment was paid in full. Apparently, Maryland (where McCormick's corporate offices were located) at the time allowed a continuing garnishment on wages based on one summons. Oklahoma did not, although now one may obtain a continuing wage

---

volving a telephone conversation with a legal assistant working for a company sued by Todd in his representation of a client, we decide not to concern ourselves with whether Todd was also in violation of Rule 3.3 for the same conduct in regard to the default judgment hearing.

**3.** The OBA took the position before the PRT Rule 8.4(c) did not require any showing of intent, while Todd argued intent to defraud or deceive did have to be shown to prove a violation. We are perplexed by the OBA's position given the fact *McMillian* was decided more than two years prior to the PRT hearing in this matter. *McMillian*, of course, was decided under DR 1-102(A)(4) and possibly it could be argued because the OBA charged Todd under current Rule 8.4(c) they were somehow under the impression any intent requirement had been abrogated. Such a belief on the part of the OBA would be incorrect, however, because 1) the

language of the former DR is virtually identical to the current Rule and 2) the current Rules of Professional Conduct expressly define fraud in the terminology section immediately preceding the numbered rules as, " '[f]raud' or '[f]raudulent' denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information." Notwithstanding the OBA's mistaken belief intent is not required to show fraudulent or deceitful conduct in the circumstances of this case under the rule Todd was charged with violating or the DR he should have properly been charged with violating, a review of the record convinces us clear and convincing evidence was presented to show violation of DR 1-102(A)(4) as to Todd's presentation of evidence at an *ex parte* default judgment hearing.

**4.** All dates are in 1985 unless otherwise specified.

garnishment. 12 O.S. 1991, § 1173.4. McCormick withheld $165.94 for the August 30 pay period apparently in conformity with Oklahoma law, but continued to deduct this same amount from four additional pay periods (September 13 and 27 and October 11 and 25) without having received additional garnishment process. Cooper informed Todd of the situation and in late October Todd telephoned McCormick corporate offices either to simply discuss the matter or to determine who to serve legal papers on. He was not able to talk to anyone with authority in regard to the matter and he apparently left his name, telephone number and that he was calling about the Cooper garnishment.

A petition was filed on October 30 by Todd on behalf of Cooper after the initial call. The first cause of action was against Bureau for wrongful garnishment and prayed for $497.82 actual damages and $50,000.00 punitive damages. The second cause was against Bureau and McCormick for conversion and prayed for $497.82 actual damages and $100,000.00 punitive damages. The third cause was against McCormick for wrongful failure to promote Cooper because of the garnishment matter involving Bureau and it prayed for $50,000.00 actual damages and $250,000.00 punitive damages. A fourth cause sought to enjoin Bureau and McCormick from proceeding further in any garnishment proceedings until further order of the court.

It is undisputed Oswald telephoned Todd on October 31. Other than that fact and that Todd did not inform Oswald a lawsuit had been filed the day before, the testimony was extremely conflicting as to the substance of the conversation. Oswald testified she specifically informed Todd reimbursement would be made for the four wage deductions not in compliance with Oklahoma law and that Todd specifically informed her reimbursement would settle the matter. The substance of Todd's testimony was he merely generally discussed the matter with Oswald, he told her McCormick was withholding money it was not allowed to withhold, and that she did not tell him there would be any reimbursement, but merely said she would look into the matter. Todd also testified he had no authority from Cooper to settle at the time of the October 31 conversation. Todd's testimony was basically corroborated by Cooper who testified he was present at the time of the conversation, that he had given no authority to settle and Todd did not tell Oswald the matter would be settled if reimbursement was made.[5]

The evidence also showed on October 31 McCormick issued a check to Cooper for $663.76 representing reimbursement for the four September and October withholdings along with a letter explaining the mistake and apologizing for any inconvenience caused to Cooper.[6] Cooper received the letter and check, which he endorsed and cashed on November 5. McCormick was served with process and the petition in early November, but for some unexplained reason, not associated with any misconduct of Todd or anyone acting on his behalf, failed to file an answer.[7] No further con-

---

**5.** Cooper did not testify at the PRT hearing. An April 28, 1988 transcript of a hearing to vacate the default judgment in Case No. CJ–85–6913 before the Honorable Robert E. Caldwell, former district judge in Tulsa County, at which Cooper testified was admitted into evidence before the PRT by agreement of the parties.

**6.** One will note the discrepancy in the Tulsa County petition requesting only $497.82, which equals three withholdings from Cooper's paychecks of $165.94, while there were actually four additional withholdings based on one garnishment summons and Cooper was reimbursed for these four which totaled $663.76. The record does not adequately explain why the petition requested only the total for three with-

holdings, rather than four. We can only surmise the petition was drafted for filing prior to Todd being informed by his client that the last withholding had taken place on or about October 25.

**7.** There is no evidence in the record Todd or anyone acting on his behalf had anything to do with McCormick's failure to file an answer to the petition filed in Tulsa County. What the evidence showed was McCormick was properly served on November 4 by receipt of a summons and the petition at the legal function department in Maryland. Further, although the evidence is not quite clear it appears either some miscommunication between McCormick, an intermediate adjustment company used by McCor-

tact was had between Todd and McCormick between October 31 and November 27, the date default judgment was entered, the circumstances of which will be explained shortly. This concludes the necessary factual matters in relation to the misconduct charged against Todd in relation to the Oswald telephone episode.

In our view neither the evidence detailed above or any other contained in the record proved by clear and convincing evidence fraudulent or deceitful conduct in violation of DR 1–102(A)(4) by Todd relating to his dealings with Oswald, as representative of McCormick. In the first instance, the OBA appears to assert Todd had some duty to inform Oswald a lawsuit had been filed against McCormick the day before the conversation. We are aware of no such duty and the OBA points to no statute, disciplinary rule or anything else which would require an attorney to so inform upon pain that if he does not discipline is warranted. Although it may have been courteous we know of no mandate which required it.[8]

We also do not find clear and convincing evidence of purpose or intent to defraud or deceive. Surely the proof adduced before the PRT identifies no logical fraudulent purpose existing *at the time of the telephone conversation.* This is so given the fact Todd had filed the lawsuit the day before and he had taken *proper* steps to serve process on McCormick, which service was in fact accomplished a few days later. In other words, at the time of the conversation there would have been absolutely no

fraudulent purpose served by either concealing the filing of the lawsuit or informing Oswald immediate reimbursement would settle the matter because *at such time* Todd had no way of knowing McCormick or its agents would for some unexplained reason (not of Todd's doing) fail to answer the petition. Had this unexplained event not occurred any alleged concealment or misrepresentation as to settlement would have been useless because it would have been uncovered in a matter of days without any apparent benefit to Todd or his client. Given the lack of any logical reason or purpose to defraud or deceive at the time of the phone call, coupled with Todd's unequivocal denial that he told Oswald the matter would be settled if reimbursement was made, we simply cannot find the OBA proved by clear and convincing evidence a violation of DR 1–102(A)(4) occurred based solely on Oswald's testimony and the fact reimbursement was made. We, however, view the situation concerning the hearing on the default judgment differently.

■ On November 27 Todd and Cooper appeared before Special District Judge Allen Klein *ex parte* to obtain a default judgment against McCormick for its failure to answer the petition. Neither informed Judge Klein of the reimbursement, even though the evidence clearly and convincingly showed Todd knew Cooper had received and negotiated the check representing the reimbursement prior to the hearing before Judge Klein.[9] The record indicates Todd

mick to handle such matters and local legal counsel in Tulsa caused the failure to file a timely answer or that one of these entities simply "dropped the ball".

**8.** Although not exactly like the situation here, we have previously held there is no fiduciary duty on the part of an attorney for a claimant to tell an insurance adjuster what the latter should know about a lawsuit. *State ex rel. Oklahoma Bar Association v. Lloyd,* 787 P.2d 855, 858 (Okla.1990). We also note Todd was *not* charged with a violation of DR 7–104 of the Code of Professional Responsibility, 5 O.S. 1981, Ch. 1, App. 3, which concerned prohibitions on a lawyer communicating with an opposing party he knows to be represented by counsel and giving advice to a person not represented by counsel, other than advice to secure counsel.

**9.** Before the PRT Todd testified he had no present independent recollection of when he became aware Cooper informed him of the reimbursement check and that it might have been from a year and a half to two years after receipt. Although this was his testimony at the PRT hearing he had *unequivocally* testified at the April 28, 1988 hearing before Judge Caldwell on vacation of the default judgment (note 5, *supra*) that he knew prior to the default hearing Cooper had both received and negotiated the check. Further, in a prior deposition of January 15, 1988, admitted to the PRT without objection, Todd appeared to testify he was aware of the reimbursement prior to the default judgment hearing. Another piece of evidence no one has mentioned to this point, although it is circumstantial in nature, is that the default judgment completely ignored the injunctive re-

and Judge Klein questioned Cooper about the allegations in the petition and default judgment was granted against McCormick in a form drafted by Todd for $400,497.82, which amount *includes the sum Todd knew had been reimbursed.* In essence, the record shows Todd presented Cooper to Judge Klein and falsely indicated McCormick owed $497.82 in actual damages, when the damages had already been reimbursed.

Thereafter, Bureau was dismissed from the lawsuit and no action was taken to collect on the default judgment until December 1987, when Todd had garnishment process issued to certain McCormick customers. One paid over $18,000 into court which was withdrawn by Todd, who disbursed 60% to Cooper and kept 40% under his contingency fee arrangement with Cooper.[10] Also in December 1987 McCormick filed a motion and petition to vacate the default judgment which was vacated, after hearing, by former District Judge Robert E. Caldwell by order filed May 27, 1988. The vacation was upheld on appeal by an unpublished memorandum opinion of the Court of Appeals, Division 1, Case No. 71,-082, *Kenneth Cooper v. Tulsa Adjustment Bureau, Inc. and McCormick & Company, Inc.* filed December 26, 1989, as corrected February 16, 1990. We denied certiorari in the matter by order of June 12, 1990.

Boiled down, Todd's explanation for his failure to inform Judge Klein at the default judgment hearing about the reimbursement was he did not believe it was significant nor did he believe it to be a defense to the overall claim(s) plead in the petition against McCormick and a default judgment would have been warranted in any event as to the claim the wrongful garnishments caused

Cooper to lose a promotion. Todd also appeared to assert the only money at issue here was the $497.82 and he basically argues it would have been ludicrous for him to jeopardize his license to practice law for such a little amount of money when he could have gotten a default judgment for the other portion of his claim. We believe, like the PRT did, such explanation is a fairly incredible one coming from a practicing attorney.

▆▆▆ In the first instance, as we read the petition of respondent the $497.82 in actual damages supported a judgment of $100,000.00 in punitive damages. This is the amount of punitive damages requested in the petition in the second cause which went along with the prayer for the $497.82 actual damages. We have held it is error to render a default judgment upon a petition claiming damages without hearing evidence upon which to assess damages. *Atchison, T. & S.F. Ry. Co. v. Lambert*, 31 Okl. 300, 121 P. 654, 656 (1912); *See also Graves v. Walters*, 534 P.2d 702, 704 (Ct. App.Okla.1975); 12 O.S. 1981, § 688 and 12 O.S.Supp.1984, § 2008(D) [now 12 O.S. 1991, § 2008(D) ] (averments in a pleading to which a responsive pleading is required, *other than those as to the amount of damages*, are admitted when not denied in the responsive pleading). Although there is no dispute Todd or Judge Klein himself *did* elicit testimony from Cooper concerning damages in the form of the asserted wrongful paycheck withholdings it is almost ludicrous for us to have to say to a member of the practicing bar that when those damages have been paid one *cannot* merely go before a court and get a judgment for the damages that have already

---

lief requested in the petition to stop any further garnishments from Cooper's paychecks. This would seem to indicate Todd, at the time he drafted the default judgment for the trial court's signature, had knowledge of the letter from Oswald to Cooper acknowledging the mistake of continuing to withhold funds from Cooper's paychecks based only on the August 1985 garnishment process. Without such knowledge one would assume any competent practicing attorney would take some additional steps, either in the default judgment process itself or

otherwise, to insure that the deductions from Cooper's paychecks on insufficient garnishment process ceased. The record indicates no such steps by Todd.

**10.** The record appears to indicate none of this money has been paid back to McCormick even though the default judgment was eventually vacated. As to Todd any debt to McCormick regarding the $18,000.00 was discharged in a bankruptcy proceeding he filed.

been paid.[11] We have further held without some actual damages there can be no recovery for punitive or exemplary damages. *Moore v. Metropolitan Utilities Co.*, 477 P.2d 692, 694 (Okla.1970). It is, thus, highly questionable whether Judge Klein would have awarded punitive damages in the amount of $100,000.00 had he known the actual damages prayed for in the second cause of the petition had been reimbursed to Cooper about three weeks earlier.[12] Thus, the matter involved not merely a few hundred dollars, but directly involved the propriety of over $100,000.00 of the default judgment.

Todd also argued before the PRT it should be significant in this disciplinary proceeding that even without the judgment in regard to the $497.82 (and presumably the $100,000.00 punitive damages that went along with it) he still would have been entitled to a substantial judgment on his third cause in regard to loss of career opportunity in the form of a promotion. Although he *may* be correct that had he actually been honest with the trial court he

may indeed have been entitled to a substantial default judgment on his third cause we do not believe such argument is sufficient to overcome the clear and convincing evidence shown by this record, both direct and circumstantial, that Todd engaged in purposeful deceitful conduct in presentation of the default judgment matter to Judge Klein.[13] Accordingly, we hold Todd guilty of professional misconduct in violation of DR 1–102(A)(4) and we must now determine the appropriate discipline.

The primary purpose in disciplinary proceedings is to inquire into a practitioner's continued fitness to practice law in an effort to protect the interests of the public, the legal profession and the courts, not to punish the involved attorney. *McMillian, supra*, 770 P.2d at 899. Another purpose is to deter the respondent from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts. *Id.* We have also held in deciding the appropriate

11. Todd has alluded to the fact there may have been some consequential damages incurred by Cooper associated with the withholdings. We do not doubt this *may* be true. However, there is absolutely no evidence in this record the $497.82 awarded as part of the default judgment was some type of consequential damages or was intended to be such by Todd. The record instead conclusively shows the $497.82 represented three of the four questioned paycheck withholdings and was part of the $663.76 reimbursed from McCormick. In fact, there is absolutely no evidence in this record to show *any* portion of the $400,497.82 default judgment contained any type of consequential damages. Todd's allusion to the contrary appears to be nothing more than specious.

12. In fact, Judge Klein testified before the PRT he would not have awarded actual damages that had previously been paid, but if there were other actual damages associated with the loss of employment opportunity claim Cooper still would have been entitled to a judgment of some type. He further testified, however, had he known actual damages had been paid this would have put him on inquiry as to the propriety of any judgment and that if Todd was aware the $400 plus actual damages had been paid he should have been made aware of this fact.

13. We are not here to decide whether a default judgment would have been proper just as to the

third cause had Todd been truthful with Judge Klein concerning the second cause and the reimbursement of the paycheck deductions. We would note, however, we have held a failure to answer *does* admit the right to recovery, but not the amount of damages. *St. Louis & S.F.R. Co. v. Zumwalt*, 31 Okl. 159, 120 P. 640, 641 (1912). Such holding appears consistent with the current Oklahoma Pleading Code which provides at 12 O.S. 1991, § 2008(D), averments not denied in a responsive pleading are admitted where a responsive pleading is required, except for amount of damages. Thus, Todd may have a point he would have been entitled to a substantial judgment anyway. This, however, can in no way excuse or lessen the fact the dishonesty surrounding the reimbursement also secured for him and his client a substantial judgment in monetary damages. In other words, although Todd's assertion has some relevance as circumstantial evidence as to wrongdoing before Judge Klein we believe the overall evidence presented in this matter shows by clear and convincing evidence purposeful deceitful conduct in presentation of the matter to Judge Klein. We also note we have considered in our evaluation the positive testimony of both Judge Klein and former Judge Caldwell, the former who vouched for Todd's honesty generally and the latter who was of the view Todd merely acted in a negligent manner, not fully understanding the significance of his conduct. We, however, simply cannot credit the negligence or inadvertence defense put forward by Todd on this record.

discipline we may look at the good character and reputation of the respondent. With these principles in mind we determine the appropriate discipline in this case is a six (6) month suspension from the practice of law.

In *State ex rel. Oklahoma Bar Association v. Graham,* 781 P.2d 829 (Okla.1989) we imposed a one (1) year suspension from the practice of law for fraudulent conduct involving a tribunal and other lesser misconduct. In *McMillian, supra,* we imposed public censure for deceitful conduct toward a tribunal and opposing counsel, but we specifically noted in said case we were taking into consideration respondent's unblemished professional record for 15 years and other mitigating evidence in the form of numerous character witnesses. *See also State ex rel. Oklahoma Bar Association v. Stubblefield,* 766 P.2d 979 (Okla.1988) (30 day suspension for intentional misrepresentations on court documents given evidence of good character and reputation). As to the instant matter we consider as mitigating evidence a statement by Judge Klein in his testimony which essentially vouched for Todd's general honesty. We also consider the testimony of former Judge Caldwell to the effect it was his view respondent was merely negligent in regard to this matter, rather than acting with any willful intent. Considering these mitigating statements and no previous conduct warranting discipline has been brought to our attention, we believe the conduct involved here falls between that found to exist in *Graham, supra* and *McMillian, supra* and a six (6) month suspension from the practice of law is warranted.[14]

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by this Court Todd is suspended from the practice of law in the State of Oklahoma for a period of six (6) months from the date this opinion becomes final and he is further ordered to pay the costs of this matter in the amount of $958.10 within 90 days from the date this opinion becomes final.

HODGES, V.C.J., and HARGRAVE, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, Chief Justice with whom WATT, J., joins, concurring in part; dissenting in part.

I concur in the court's finding that Todd engaged in fraudulent conduct when pressing the motion for default judgment; I dissent from imposition of milder-than-recommended discipline. I would visit a one-year suspension recommended by the Professional Responsibility Tribunal.

HODGES, Vice Chief Justice, concurring.

I concur with the majority opinion on the imposition of a six (6) month suspension for the respondent Todd instead of a one (1) year suspension as suggested by the dissents for the following additional factors: (1) The Professional Responsibility Tribunal's recommendation for a one year suspension was based on the finding of *two* counts of misconduct instead of this court's unanimous finding of misconduct in only one of two counts, (2) Judge Caldwell, the trial judge, who set aside the default judgment after an adversary hearing, testified in the disciplinary hearing below that in his opinion Respondent Todd's misconduct was a matter more of neglect rather than of willful intent and (3) there was no finding of prior misconduct.

---

**14.** We should also note deceitful or fraudulent conduct toward a tribunal has on occasion warranted disbarment from the practice of law. *State ex rel. Oklahoma Bar Association v. Hens-* ley, 661 P.2d 527 (Okla.1983) (disbarment ordered for fraudulent conduct to a tribunal after previous 30 day suspension for prior misconduct).