OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TRENARY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TRENARY
2016 OK 8
Decided: 01/26/2016
SCBD-6187; SCBD-6228 (combined for purposes of published opinion)
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 8, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 
 


 


STATE OF OKLAHOMA, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
JAY ERIC TRENARY, Respondent.

BAR DISCIPLINARY PROCEEDING

¶0 The Oklahoma Bar Association commenced disciplinary proceedings against attorney Jay Eric Trenary pursuant to Rule 7.1 and 7.2 of the Rules Governing Disciplinary Proceedings and Rule 6 of the Rules Governing Disciplinary Proceedings. The two matters were joined for purposes of a hearing before the Professional Responsibility Tribunal. The Professional Responsibility Tribunal held a hearing and issued a report recommending Respondent's license be suspended for a period of two years and one day.

RESPONDENT DISBARRED; COSTS IMPOSED

Gina L. Hendryx, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.
Jay Eric Trenary, Pro Se.

PER CURIAM
¶1 "[A] license to practice law is conferred for the benefit of the public." State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, ¶ 19, 71 P.3d 1, 4. Thus, the goal in bar disciplinary matters is not to punish an attorney for his or her conduct, but to "safeguard[] the interest of the public, of the courts, and of the legal profession." State ex rel. Okla. Bar Ass'n v. Albert, 2007 OK 31, ¶ 11, 163 P.3d 527, 532-533. With this purpose in mind, we "must weigh all relevant factors including those that mitigate the severity of discipline and those that justify severe sanctions." Stewart, 2003 OK 13, ¶ 19, 71 P.3d at 4. We must also weigh the deterrent effect upon the Respondent and the state bar as a whole. State ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 56, ¶ 22, 71 P.3d 18, at 29.
Factual Background
¶2 Respondent was admitted to practice law in this state on September 28, 1995. Upon admittance, he worked as an assistant district attorney for about eleven years and as an assistant attorney general for a year. Respondent moved to Oregon in 2005, but did not practice law. During his three-year hiatus, he maintained his Oklahoma law license. He returned to Oklahoma in 2008, and worked as a public defender for the Oklahoma Indigent Defense System for two years. During his time in public service, Respondent received several awards for his service. In 2010, Respondent opened his own practice, but private practice did not go as Respondent had envisioned. "[M]aking the transition from government service to private practice was difficult" for him.[1] Respondent admitted he compounded this difficult transition by maintaining an unhealthy relationship with his girlfriend.
¶3 Respondent's troubled personal life eventually led to his arrest in Logan County in 2010 after an altercation with his girlfriend. He was charged in June of 2011 with domestic abuse and obstructing an officer. The docket indicates that although Respondent was acquitted of the domestic abuse charge, a jury did convict Respondent of obstructing an officer, and he was sentenced to a $500 fine. The OBA never advised this Court of his conviction,[2] and the record in the case before us indicates Respondent began participating in a diversion program supervised by the OBA. At the time of Respondent's first conviction, Rule 7.2 of the Rules Governing Disciplinary Proceedings (RGDP) gave the OBA discretion whether or not to initiate a Rule 7 proceeding after the criminal conviction of a lawyer. Because a Rule 7 proceeding was never initiated after Respondent's July 2012 conviction, this Court's record is incomplete as to the circumstances surrounding that conviction for obstructing an officer.[3]
¶4 Regardless, in April of 2012, Respondent was arrested again in Logan County after a domestic dispute. Respondent was immediately charged with three misdemeanor counts of resisting an officer, obstructing an officer, and disturbing the peace. Respondent pled guilty to obstructing an officer and disturbing the peace and was given a deferred sentence[4]. Under the newly amended Rule 7.2 of the RGDP, the OBA gave notice to this Court of Respondent's deferred sentence and initiated Rule 7 disciplinary proceedings. On November 24, 2014, this Court entered an Order of Interim Suspension pursuant to Rule 7.3 of the RGDP, which has remained in effect throughout the duration of these proceedings.
¶5 Although the exact date is unclear, Respondent was arrested yet again sometime in 2012 in Oklahoma County after an altercation with his girlfriend wherein Respondent hit his girlfriend to "get her off of my mother."[5] Neither Respondent nor his girlfriend was charged in that case. Respondent was arrested again in Lincoln County after an officer had to pull a gun on Respondent to get him off of his girlfriend, and he was charged in September of 2013 with domestic assault and battery by strangulation. Those charges were later dismissed. In February of 2013, Respondent and his girlfriend became the parents of twin boys. Respondent testified that about a year after the children were born, one of the children had severe health issues and had to be hospitalized for approximately three and half weeks, complicating Respondent's personal life even further. Respondent testified he is currently undergoing counseling for these and other personal issues.[6]
Standard of Review
¶6 Review of disciplinary proceedings before the PRT is conducted by this Court using a de novo standard. State ex rel. Okla. Bar Ass'n v. Cox, 2011 OK 73, ¶ 10, 257 P.3d 1005, 1008. As we have announced in prior decisions: "The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with [this Court] in the exercise of our exclusive original jurisdiction in bar disciplinary matters." Taylor, 2003 OK 56, ¶ 2, 71 P.3d 18, 21, (citing State of Okla. ex rel. Okla. Bar Ass'n v. Todd, 1992 OK 81, ¶ 2, 833 P.2d 260, 262). Factual and legal determinations of the PRT are not binding on us, and any recommendations are merely advisory. Id. Likewise, we are required to ensure the OBA has established charges of misconduct by clear and convincing evidence. State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31, ¶ 13, 212 P.3d 1186, 1192. Admissions or stipulations must be supported by testimony and/or exhibits, and we will evaluate the weight and credibility of the evidence presented to determine if a lawyer has violated the rules governing their professional conduct. Id.
Procedural History
¶7 On October 20, 2014, the OBA, in compliance with Rule 7.1 and 7.2[7] of the RGDP, provided this Court with certified copies of the Criminal Information and Deferment in which Respondent pled guilty to one count of Obstructing an Officer and one count of Disturbing the Peace, a violation of 21 O.S. §§ 540 and 1362, respectively. Respondent was given a deferred sentence.[8] On November 24, 2014, this Court entered an Order of Interim Suspension pursuant to Rule 7.3 of the RGDP, suspending Respondent from the practice of law and giving him the opportunity to show cause as to why the interim suspension should be lifted. After seeking an extension to file his response, Respondent filed a Motion to Set Aside Order of Interim Suspension on December 29, 2014. After consideration, this Court denied Respondent's motion to lift the interim suspension on January 12, 2015, and Respondent has remained suspended.
¶8 On January 30, 2015, the OBA also filed a two-count Complaint against Respondent pursuant to Rule 6 of the RGDP,[9] alleging violations of Rules 1.1, 1.3, 1.4, 1.5, 1.15 of the Oklahoma Rules of Professional Conduct (ORPC) and Rule 1.3 and 5.2 of the RGDP. Respondent did not file an Answer to the Rule 6 Complaint. On February 9, 2015, the OBA moved to deem the allegations contained in the Rule 6 Complaint admitted pursuant to Rule 6.4 of the RGDP. On January 30, 2015, the OBA moved to join the Rule 6 and Rule 7 disciplinary proceedings against Respondent for purposes of the disciplinary hearing, briefing, and de novo review. Respondent did not file a response to the OBA's motion, and the cases were joined for purposes of a hearing before the PRT. The PRT held a hearing on February 11, 2015, and filed its report with this Court on June 8, 2015, recommending Respondent be suspended for two years and one day and be charged the costs of the proceedings.[10] The PRT also recommended Respondent be required to reimburse unearned fees to two clients. After several extensions, at the request of the Respondent, briefing was completed in this case on October 16, 2015.
Rule 7 Proceedings
¶9 On April 8, 2012, Guthrie police received a call regarding a domestic dispute. Upon the officer's arrival, Alisha LeClair, who had called in the dispute, came out of the residence, appeared nervous and shaking, and told the officer she needed to speak to him outside. Ms. LeClair told the officer that Respondent had barricaded himself in the bathroom and would not leave her home. The officer followed Ms. LeClair into the home and to the bathroom. Ms. LeClair opened the bathroom door, and the officer observed Respondent in the bathroom, fully clothed, shoes on, with the shower running. After requesting that Respondent exit the bathroom and after repeatedly requesting that Respondent put his hands behind his back, the officer subdued Respondent, placed him in handcuffs, and took him outside. Once outside, Respondent became belligerent and began yelling obscenities, which attracted the attention of several neighbors. Respondent continued to resist arrest, forcing the officer to put Respondent on the ground and call for assistance.
¶10 Respondent was then transported to Mercy Hospital in Logan County for treatment of a possible shoulder injury. Respondent continued to direct obscenities to the arresting officer while at the emergency room, and another Guthrie police officer was dispatched to sit with Respondent while he was being treated. While waiting with Respondent at the hospital, Respondent continued to insist he had been falsely arrested. After being released from the emergency room, the officer attempted to put handcuffs on Respondent to transfer him to the Guthrie Police Department, but Respondent sat on the floor refusing to stand or comply with the officer's commands. The officer had to call for assistance from another officer to physically pick Respondent up off the floor and place him in a wheelchair. Respondent refused to sit in the wheelchair, so the officer had to hold Respondent in the wheelchair while a nurse pushed him to the patrol car. After refusing to get in the patrol car, the two officers again had to lift Respondent and put him in the back of the patrol car. Respondent continued to scream and yell while being transported to the police station, and again, had to be carried from the patrol car to the jail after refusing to get out of the patrol car. As a result of the incident, Respondent was charged on April 9, 2012, with three misdemeanor counts of resisting an officer, obstructing an officer, and disturbing the peace. Respondent pled guilty to obstructing an officer and disturbing the peace and was given a deferred sentence.
¶11 Rule 7 of the RGDP provides a mechanism for conducting disciplinary proceedings on a summary basis. See State ex rel. Okla. Bar Ass'n v. Hart, 2014 OK 96, ¶ 7, 339 P.3d 895, 898. This provision is invoked when a lawyer "has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law."[11] A deferred sentence is deemed conclusive evidence of an attorney's commission of criminal acts in a disciplinary case initiated under RGDP Rule 7.[12]
¶12 Although a criminal conviction does not ipso facto establish an attorney's unfitness to practice law, Rule 8.4 of the ORPC provides that "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. . . ."[13] Comment 2 to Rule 8.4 provides:


[2] Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving 'moral turpitude.' That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.[14] 
¶13 Respondent's behavior at Ms. LeClair's house on April 8, 2012, and his actions during his arrest, clearly reflect his willful indifference for the rule of law and constitute a serious interference with the administration of justice.[15] Respondent's arrest in April of 2012, is by itself, enough to result in severe discipline. But Respondent's additional arrests over the past several years indicate a serious pattern of decline adversely affecting Respondent's fitness and ability to practice law. The record in this case reveals clear and convincing evidence of professional misconduct in violation of Rule 8.4 of the ORPC.
Rule 6 Proceedings
¶14 As mentioned above, in addition to the Rule 7 proceeding, the OBA also initiated Rule 6 proceedings against Respondent alleging two counts of professional misconduct for neglect of client matters, failure to keep clients informed, failure to respond to lawful demands for investigation, and refusal to return files or refund unearned client fees in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15 of the ORPC and Rules 1.3 and 5.2 of the RGDP. Respondent did not file an Answer to the Rule 6 Complaint despite receiving notice of the Complaint by certified mail and hand delivery.[16]
¶15 Because Respondent failed to file an Answer to the Rule 6 Complaint, the OBA moved to deem the allegations contained in the Rule 6 Complaint admitted pursuant to Rule 6.4 of the RGDP. Rule 6.4 of the RGDP provides: "The respondent shall within twenty (20) days after the mailing of the complaint file an answer with the Chief Justice. The respondent may not challenge the complaint by demurrer or motion. In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed."[17] The PRT correctly deemed the allegations in the Rule 6 Complaint admitted and heard evidence only as to mitigation.
Count I: The Foster Grievance
¶16 On May 29, 2013, Bill Foster and his sister Francis Foster paid Respondent $2,500 to represent them in a dispute over the purchase of an RV Park. From May 29, 2013, through October of 2013, the Fosters made numerous attempts to contact Respondent for a status update on their case. Respondent eventually met with the Fosters in October and filed a Petition on their behalf on October 17, 2013. On December 12, 2013, the Fosters paid Respondent an additional $2,500 retainer for future legal work. After paying the additional fee, the Fosters again made repeated attempts to contact Respondent regarding the status of the litigation. On February 28, 2014, Mr. Foster called Respondent to inform him they were terminating his representation and needed their file to meet with a new attorney. Mr. Foster also requested a return of the unearned $2,500 retainer and an accounting of the retainer money paid to date.
¶17 After obtaining new counsel, the Fosters learned that a motion for summary judgment had been filed in their case on February 27, 2014, and that the service copy of the motion had been sent to Respondent's official roster address in Blackwell, Oklahoma. Respondent did not notify the Fosters of the motion. In fact, Respondent never responded to any of the Fosters' inquiries and has not contacted the Fosters since February 28, 2014. Respondent never provided the file to the Fosters or their new counsel, and Respondent has yet to return the unearned $2,500 retainer fee to the Fosters.
¶18 Respondent failed to represent the Fosters with competence and diligence. He failed to promptly keep his clients informed about the representation and failed to promptly comply with reasonable requests for information. Respondent failed to safe keep his client's funds held in connection with the representation separate from his own funds. Respondent charged an unreasonable fee for the work performed and refused to account for the funds when requested to do so. The record reflects clear and convincing evidence of professional misconduct in violation of Rules 1.1, 1.3, 1.4, 1.5, 1.15 of the ORPC and Rule 1.3 of the RGDP.
Count II: The Martin Grievance
¶19 On or around January 31, 2014, Destiny Martin paid Respondent $1,450 to represent her in a criminal matter in Oklahoma County District Court. On January 31, 2014, Respondent appeared with Ms. Martin at the arraignment hearing on her criminal charges. Ms. Martin's next court date was scheduled for February 20, 2014. Ms. Martin appeared but Respondent failed to appear.[18] Attempts to contact Respondent were not returned. Ms. Martin was ordered to appear in court every day until she had representation. Ms. Martin returned to court at 9:00 a.m. the next day and found an attorney who was able to represent her through the conclusion of the matter. Ms. Martin had to borrow money from her family to pay the new attorney because Respondent would not return her calls and had not refunded the unearned $1,450 fee.
¶20 Respondent failed to represent Ms. Martin with diligence and failed to promptly reply to reasonable requests for information. Respondent collected an unreasonable fee from Ms. Martin because he did not perform the work for which he was paid. Respondent failed to safe keep his client's funds held in connection with the representation separate from his own funds. After Ms. Martin submitted a written grievance to the OBA regarding Respondent's conduct, the OBA mailed a copy of the grievance to Respondent's official roster address requesting a response within twenty days. Despite being granted numerous extensions to respond, Respondent failed to respond to Ms. Martin's grievance. We find clear and convincing evidence that Respondent's actions constitute professional misconduct in violation of Rules 1.3, 1.4, 1.5, and 1.15 of the ORPC and Rules 1.3 and 5.2 of the RGDP.
Mitigating Evidence
¶21 Respondent has provided this Court with little evidence in support of mitigation. His assertion that he has taken responsibility for and admitted wrongdoing in these proceedings is not supported by the record. During the PRT hearing, Respondent continually attempted to deflect responsibility for his actions. For example, despite Respondent's conviction for obstructing an officer and disturbing the peace, Respondent continued to argue before the PRT and in his brief to this Court that the officer illegally arrested him at Ms. LeClair's house in April of 2012.[19] Respondent also attributed the domestic altercations to his girlfriend, saying she "has a history of attacking people" and "has some issues."[20] Also concerning is Respondent's blameful attitude toward his former client Mr. Foster. After a somewhat heated exchange during his cross examination of Mr. Foster, Respondent told the PRT: "And Bill Foster, bless his heart, is a difficult client. He's very demanding, which can be an asset. He can be very aggressive. . . ."[21] Respondent's attitude and his comments at the PRT hearing reflect his lack of remorse or acceptance of responsibility for his actions.
¶22 In addition, Respondent continues to dispute whether Ms. Martin or the Fosters are entitled to a refund for unearned fees, and if so, how much. Respondent persistently maintained at the PRT hearing that he earned the fees paid by each of the clients despite the fact he has yet to provide a detailed accounting for time spent on each of those cases. The fees paid in advance of representation should have been deposited into a client trust account, but Respondent admitted before the PRT he did not maintain a client trust account. Upon inquiry from his clients, Respondent should have provided a detailed accounting and returned unearned fees. Instead, after repeated attempts to contact Respondent, both Ms. Martin and the Fosters were forced to find and pay for new attorneys to pursue their respective causes and have yet to be refunded for unearned fees.
¶23 Finally, Respondent failed to respond to the OBA's inquiries and never filed an answer to the Rule 6 Complaint despite being aware of his duty to respond. Additionally, Respondent admitted several times to the PRT that he had not come prepared for the hearing and had not reviewed the Martin file or the Foster file in preparation for the hearing.[22] "'[A] person who holds a bar license must promptly and adequately respond to allegations of misconduct when requested to do so; and [a]ttorneys who fail to respond to client grievances, who fail to answer formal charges of misconduct, and who fail to appear and participate in disciplinary proceedings, not only show blatant disregard for this Court's authority, but reveal how little they value their license to practice law.'" State ex rel. Okla. Bar Ass'n v. Bradley, 2014 OK 78, ¶ 19, 338 P.3d 629 (quoting State ex rel. Okla. Bar Ass'n v. Haave, 2012 OK 92, ¶ 15, 290 P.3d 747, 752.
¶24 Without credible, corroborating evidence we cannot accept Respondent's explanation of his difficult personal circumstances or emotional issues as mitigation for his behavior. Additionally, we are not convinced Respondent has accepted full responsibility for his actions, and we do not believe Respondent comprehends the seriousness of his conduct, which has brought discredit to himself and to the legal profession and has directly harmed several clients.
Discipline
¶25 Although we look to prior decisions for guidance in imposing consistent discipline, the particular facts and circumstances of each case dictate its resolution. Hart, 2014 OK 96, ¶ 15, 339 P.3d at 900. The OBA has suggested a suspension for a period of time in excess of one year, and the PRT recommended Respondent be suspended for two years and one day. Respondent asks for leniency and suggests a suspension between nine and eighteen months.
¶26 For the reasons discussed, we find Respondent has forfeited his right to practice law in this state. Anything less than disbarment would severely undermine public confidence and trust in the dignity and integrity of the legal profession. Thus, we order the Respondent Jay Eric Trenary disbarred as of the date of this opinion. Respondent is also ordered to pay the costs of this proceeding and to reimburse $2,500 to the Fosters and $1,450 to Ms. Martin. If restitution has already been made on his behalf, Respondent is ordered to reimburse the Client Security Fund.

RESPONDENT DISBARRED; COSTS IMPOSED

¶27 Reif, C.J., Combs, V.C.J., Watt, Taylor and Gurich, JJ., concur;
¶28 Kauger, Winchester and Colbert, JJ., concur in part and dissent in part;

Winchester, J., with whom Kauger and Colbert, JJ., join, concurring in part and dissenting in part:
I would follow the recommendation of the Professional Responsibility Tribunal.
¶29 Edmondson, J., not participating.

FOOTNOTES

[1] Transcript of Hearing at 240.

[2] Respondent also did not disclose this information to the PRT during his disciplinary hearing, testifying only that he was acquitted on the domestic abuse charge. Transcript of Hearing at 257.

[3] No Rule 7 proceeding was initiated by the OBA in spite of the fact that the record in this case indicates Respondent did not successfully complete the diversion program. Respondent testified in this case he began participating in the program but his participation "didn't go as planned" due to his admitted pattern of drug use and refusal to comply with the drug-testing policy. Transcript of Hearing at 257. Additionally, Respondent couldn't recall whether he had completed the recommendations of Lawyers Helping Lawyers or whether he had completed the counseling requirement of the program.

[4] This incident is described in more detail below and is the genesis of the Rule 7 proceeding in the case before us.

[5] Transcript of Hearing at 270.

[6] Respondent introduced no medical records or testimony from his counselor to substantiate such treatment. But upon recommendation by counsel for the OBA, the PRT panel inquired at the beginning of the hearing about Respondent's mental capacity to proceed due to his ongoing counseling. After questioning Respondent about his ongoing counseling and his personal circumstances, the PRT Presiding Master inquired:


Q: Sir, do you want to proceed today or not? Are you asking--I hear--quite frankly, I heaer two different things coming out of your mouth.
A: I know.
Q: One is, you'd like to face the music and get it over with, the other one is I don't feel I'm prepared. So, quite frankly, which is it?
A: I understand I'm giving mixed signals, sir. I want to proceed today.
Transcript of Hearing at 23-24.

[7] 5 O.S. 2011, ch. 1, app. 1-A.

[8] Respondent maintains he pled no contest. The deferment order indicates otherwise, and this Court is unable to ascertain from the trial court docket whether Respondent in fact pled no contest as the criminal record has apparently been expunged. Regardless, it makes no difference under Rule 7.1 of the RGDP.

[9] 5 O.S. 2011, ch. 1, app. 1-A.

[10] The PRT requested several extensions to file its report, which were granted by this Court.

[11] 5 O.S. 2011, ch. 1, app. 1-A, R. 7.1.

[12] Id.

[13] 5 O.S. 2011, ch. 1, app. 3-A, R. 8.4 (emphasis added).

[14] 5 O.S. 2011, ch. 1, app. 3-A, R. 8.4 cmt. 2 (emphasis added).

[15] The record reflects that Respondent has had a long history with the Office of General Counsel at the OBA. Although Respondent has been faced with complicated personal circumstances over the past several years, the General Counsel's office has apparently given Respondent every opportunity to work through these issues including participation in the diversion program, no-cost counseling, and repeated extensions to submit responses to grievances.

[16] See Motion to Deem Allegations Admitted, Ex. A-C. When questioned at the PRT hearing about whether he in fact knew about the Rule 6 Complaint and knew he needed to file an answer within twenty days, Respondent stated he received notice of the Complaint and knew based on his conversations with the OBA that he needed to file an answer to the Complaint.

[17] 5 O.S. 2011 ch. 1, app. 1-A, R. 6.4 (emphasis added).

[18] Although Respondent suggested at the PRT hearing he was unable to appear for Ms. Martin due to the hospitalization of his child, the record reflects Respondent was able to attend court for another client on that same day in Logan County.

[19] Transcript of Hearing at 32; Respondent's Brief at 2-3.

[20] Transcript of Hearing at 262.

[21] Transcript of Hearing at 246.

[22] In fact, despite knowing about both the Foster grievance and the Martin grievance for more than six months, Respondent had yet to even retrieve the files from storage. Transcript of Hearing at 253; Hearing Exhibits, Ex. 13.




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 81, 833 P.2d 260, 63 OBJ 1714, State ex rel. Oklahoma Bar Ass'n v. Todd
Discussed
 2003 OK 13, 71 P.3d 1, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. STEWART
Discussed at Length
 2003 OK 56, 71 P.3d 18, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. TAYLOR
Discussed at Length
 2007 OK 31, 163 P.3d 527, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ALBERT
Discussed
 2009 OK 31, 212 P.3d 1186, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KINSEY
Discussed
 2011 OK 73, 257 P.3d 1005, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COX
Discussed
 2012 OK 92, 290 P.3d 747, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HAAVE
Discussed
 2014 OK 78, 338 P.3d 629, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BRADLEY
Discussed
 2014 OK 96, 339 P.3d 895, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HART
Discussed at Length
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 540, Obstruction of Public Officer - Recording the Activity of an Officer in a Public Area
Cited